# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# BRYSON CITY DIVISION
# CIVIL CASE NO. 2:14-cv-00028-MR
# [CRIMINAL CASE NO. 2:10-cr-00014-MR-6]

| | |
|---|---|
| HUMBERTO LONGORIA MORENO, ) <br> ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) <br> _____ ) | **MEMORANDUM OF** <br> **DECISION AND ORDER** |

**THIS MATTER** is before the Court on Petitioner's Motion under 28, United States Code, Section 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 1]. For the reasons that follow, the Court will deny and dismiss the petition.

## I.  BACKGROUND

Beginning in 2007, Petitioner supplied large quantities of marijuana to members of a drug-trafficking organization operating around Sylva, North Carolina. [Criminal Case No. 2:10-cr-00014-MR-6, Doc. 243 at 158-59: Trial Tr.]. Petitioner initially provided his co-conspirators with five to ten pounds of marijuana per week, but he soon increased the size of the deliveries to twenty to forty pounds. [Id. at 158-60]. Petitioner supplied the

marijuana to wholesalers, who subsequently transferred smaller quantities to street level dealers for distribution. [Id. at 183-85; 201-03; 221-26; 246-47]. Early on, Petitioner's co-conspirators paid him cash in exchange for the marijuana. [Id. at 160].

In late 2007 or early 2008, Petitioner moved from North Carolina to Texas, where he continued his drug-trafficking activities. [Id. at 191]. Petitioner introduced at least one of his North Carolina buyers to his nephew, who continued to supply drugs in quantities ranging from 80 to 120 pounds per month. [Id. at 161-63]. Petitioner also shipped marijuana to his North Carolina-based co-conspirators from Texas using false names and addresses. [Id. at 170; 227-28]. Co-conspirators testified to the Petitioner making at least twelve separate marijuana shipments in amounts ranging from twenty to forty pounds each. [Id. at 183; 185-86]. During this time, the drug dealers in western North Carolina paid Petitioner for the shipments by wiring him money or depositing the proceeds in bank accounts he controlled. [Id. at 187-91; 196-97; 229-30; 257-58].

Investigators first learned of Petitioner's drug distribution organization from a confidential source, who arranged several controlled purchases from various members of the conspiracy. [Id. at 29-32]. After conducting surveillance, investigators initiated a traffic stop of a vehicle driven by one

of the co-conspirators and discovered approximately twelve pounds of marijuana in a duffel bag during a search of the vehicle. [Id. at 40-41; 131-32; 137].

Investigators also searched a residence from which members of the organization were selling marijuana and discovered several pounds of marijuana and other items commonly used to process marijuana for sale. [Id. at 42-44; 51-57]. As part of the investigation, officers retrieved bank and postal records connecting Petitioner to the drug distribution organization, including wire transfers through which members of the organization paid Petitioner for marijuana shipments. [Id. at 117-20].

The grand jury for the Western District of North Carolina charged Petitioner, along with one of his co-defendants, in a Superseding Bill of Indictment with conspiracy to possess with intent to distribute at least 1,000 kilograms of marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A); and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). [Id., Doc. 96: Superseding Indictment]. In September 2010, Petitioner was arrested in the Southern District of Texas. At that time, he retained Attorney L. Aron Peña to represent him, and he was released on bond. [Id., Doc. 101: Rule 5(c)(3) Docs.]. On March 14, 2011, Petitioner made his initial appearance in this Court. [Id., Doc. 236: Initial Appearance

Tr.]. Shortly thereafter, this Court granted Attorney Peña's motion to appear *pro hac vice* with Attorney Kenneth D. Snow serving as local counsel. [Id., Doc. 118: Amended Order]. Petitioner's case was scheduled for trial during this Court's term beginning May 31, 2011. [Id., Doc. 121: Scheduling Order].

Prior to trial, Petitioner moved to dismiss the Indictment, alleging a violation of the Speedy Trial Act. [Id., Doc. 128: Motion]. This Court denied Petitioner's motion, concluding that there were no violation of the Act. [Id., Doc. 134: Order]. This Court subsequently granted an unopposed motion to continue Petitioner's trial to allow time to consider an apparent conflict involving Attorney Peña, who represented both Petitioner and another member of the conspiracy. [Id., Doc. 137: Order]. Following an inquiry into status of counsel, this Court permitted Attorney Peña to withdraw, and Attorney Snow took over as lead counsel. [Id., Doc. 165: Order]. This Court subsequently granted a second motion to continue to allow Attorney Snow sufficient time to prepare for trial following his elevation from local counsel to lead counsel. [Id., Doc. 167: Order].

Prior to trial, the parties filed a signed plea agreement, in which Petitioner agreed to plead guilty to the drug conspiracy charge. [Id., Doc. 180: Plea Agreement]. As part of the agreement, the parties agreed to

4

jointly recommend that the amount of marijuana that was known to or reasonably foreseeable to Petitioner was between 100 and 400 kilograms. [Id. at 2]. In addition to dismissing the money laundering charge, the Government agreed to recommend a sentence at the low end of the advisory guidelines range. [Id. at 1-2]. Petitioner appeared for a plea hearing before the Magistrate Judge on September 26, 2011. [Id., Doc. 238, Plea Hrg. Tr.]. On the morning of the hearing, Petitioner informed Attorney Snow that he no longer wished to plead guilty and had retained another attorney, Adolfo Al Alvarez, to represent him at trial. [Id. at 1-3]. In light of his decision to withdraw from the plea agreement, Petitioner's trial began on October 3, 2011. At trial, Petitioner was represented by both Attorney Alvarez and Attorney Snow, with Attorney Snow serving as lead counsel. [Id., Doc. 242 at 3: Trial Tr.].

During trial, the Government presented testimony from several of the officers involved in the investigation, as well as four of Petitioner's co-conspirators. [Id., Doc. 243 at 290-305]. In addition, the Government introduced physical evidence, including drugs and drug paraphernalia seized during the investigation, bank and money transfer records, and shipping documents. [Id., Doc. 193: Gov't Ex. List]. Petitioner presented evidence and called his nephew to testify. [Id., Doc. 244 at 6-57]. During

5

the trial, Attorney Snow made the opening statement and cross-examined most of the government's witnesses, while Attorney Alvarez conducted the direct examination of Petitioner's nephew and gave the closing argument. [Id., Doc. 243 at 24-305; Doc. 244 at 1-57; 93-106]. At the conclusion of trial, the jury found Petitioner guilty of both the drug conspiracy and money laundering counts and, in a special verdict form, found that Petitioner was responsible for 1,000 kilograms or more of marijuana. [Id., Doc. 198: Jury Verdict].

Before sentencing, the probation officer prepared a presentence investigation report (PSR), calculating an advisory guidelines range of 188 to 235 months in prison based on a total offense level of 36 and a criminal history category of I. [Id., Doc. 211 at 11: PSR]. In calculating Petitioner's offense level, the probation officer began with a base offense level of 32, consistent with the jury's finding that Petitioner was accountable for more than 1,000 kilograms of marijuana, and added four levels based on Petitioner's role as an organizer and leader of the conspiracy. [Id. at 7-8].

Through Attorney Snow, Petitioner objected to the four-level enhancement based on his role in the conspiracy and submitted a sentencing memorandum, requesting a variance or downward departure based on Petitioner's lack of prior criminal history, his military service, and

his history of physical and mental impairments, including severe depression. [Id., Doc. 210: PSR Objection; Doc. 220: Sent'g Memo.].

Petitioner's sentencing hearing was held on May 31, 2012. [Id., Doc. 239: Sent'g Hrg. Tr.]. At the outset, in response to this Court's questions, Petitioner affirmed that he had reviewed the presentence report with counsel and understood it. [Id. at 3]. Attorney Snow also affirmed that he had reviewed the report with Petitioner, stating that he and Petitioner "had several phone calls relative to this document." [Id. at 3-4]. Citing evidence presented at trial, this Court overruled Petitioner's objection to the role enhancement, concluding that Petitioner was "the primary person with regard to the operation of the conspiracy." The Court then adopted the guidelines range set forth in the presentence report. [Id. at 5-7]. After hearing from both sides, this Court granted Petitioner's motion for a downward departure based on his military service and sentenced him to 151 months in prison. [Id. at 17-18]. This Court entered judgment on June 6, 2012. [Id., Doc. 223: Judgment].

Petitioner filed a timely notice of appeal. [Id., Doc. 225: Notice of Appeal]. On appeal, Petitioner argued that he was tried in violation of the Speedy Trial Act and that the Government had not complied with its discovery obligations. The United States Court of Appeals for the Fourth

7

Circuit affirmed Petitioner's conviction and sentence in an unpublished opinion. United States v. Moreno, 535 Fed. App'x 281 (4th Cir. 2013). The Fourth Circuit issued its mandate on August 19, 2013. [Civil No. 2:10-cr-14-MR-6, Doc. 260: Mandate]. Petitioner did not seek a writ of certiorari from the Supreme Court.

Petitioner placed the instant petition in the prison mailing system on July 10, 2014, and it was stamp-filed in this Court on July 14, 2014. In the petition, Petitioner (1) attempts to relitigate his Speedy Trial Act claim; (2) asserts that trial counsel was ineffective for failing to (i) communicate a plea offer, (ii) adequately prepare for trial and call witnesses or present a defense, (iii) argue that Petitioner was not competent to stand trial, or (iv) discuss the presentence report or challenge a prior conviction included in the report or the amount of drugs involved in the conspiracy; and (3) contends that the Government engaged in misconduct by failing to disclose before sentencing that it intended to pursue certain enhancements.

## II. STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any

relief. After having considered the record in this matter, the Court finds that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

### A. Petitioner's Speedy Trial Act Claim

In his first ground for relief, Petitioner contends that his rights under the Speedy Trial Act were violated.

Petitioner's Speedy Trial Act claim is foreclosed because the Fourth Circuit has already considered and rejected it on direct appeal. A petitioner may not "recast, under the guise of a collateral attack, questions fully considered" and decided on direct appeal. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976). Instead, the law of the case doctrine "forecloses relitigation of issues expressly or impliedly decided by the appellate court." United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993). Accordingly, Petitioner's first ground for relief is dismissed.

### B. Petitioner's Claim of Ineffective Assistance of Counsel

In his second ground for relief, Petitioner contends that his counsel were ineffective for failing to (i) communicate a plea offer, (ii) adequately prepare for trial and call witnesses or present a defense, (iii) argue that Petitioner was not competent to stand trial, or (iv) discuss the presentence

report or challenge a prior conviction included in the report or the amount of drugs involved in the conspiracy. For the following reasons, all of these contentions are without merit.

First, Petitioner fails altogether to allege ineffective assistance or prejudice in connection with his vague assertion that counsel failed to communicate a plea offer to him. The Supreme Court has held that the right to effective assistance of counsel "extends to the plea-bargaining process," Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012), and the failure to communicate a formal plea offer constitutes ineffective assistance. Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012). To satisfy the prejudice prong based on counsel's ineffectiveness in failing to communicate a plea offer, a defendant must show a "reasonable probability" that (i) he would have accepted the offer but for counsel's ineffectiveness, (ii) the plea offer would not have been canceled by the government or rejected by the court, and (iii) the plea offer would have resulted in a more favorable outcome for the defendant. Lafler, 132 S. Ct. at 1385; Frye, 132 S. Ct. at 1409.

Here, Petitioner's allegation that counsel failed to communicate a plea offer to him is entirely conclusory. Petitioner claims that a plea agreement offered by the Government was never relayed to Petitioner before trial commenced, and Petitioner contends that acceptance of the

plea offer would have resulted in a much lower sentence.  Petitioner does not identify when the alleged plea offer was made, the terms of the alleged offer, or which of Petitioner's three lawyers was allegedly ineffective for failing to communicate the undefined offer.  Given the paucity of Petitioner's allegation, his claim fails on its face.  See Raines v. United States, 423 F.2d 526, 531 (4th Cir. 1970) ("Allegations of a vague, conclusory or palpably incredible nature do not raise factual issues which require a full hearing.") (internal quotations omitted).

Not only is Petitioner's allegation vague and conclusory, but it also lacks plausibility when considered against the record.  Before trial, counsel not only communicated a favorable plea offer to Petitioner, but Petitioner signed the proposed agreement.  He then refused to go through with his plea hearing.  Petitioner does not even attempt to reconcile the facts related to the signed plea offer with his vague allegation.  Moreover, given Petitioner's actions in rejecting a plea deal just days before trial, he is unable to show, as he must, that he would have accepted some other alleged plea deal but for counsel's ineffectiveness.  Because Petitioner has not adequately alleged deficient performance or prejudice, his claim is without merit.

Next, Petitioner's claim that counsel were unprepared for trial because they did not have enough time to prepare is also belied by the record. Petitioner's lead counsel at trial, Attorney Snow, had been involved in the case for more than six months by the time Petitioner went to trial. Furthermore, a review of the record shows that Attorney Snow effectively cross-examined Government witnesses. Moreover, despite having just recently joined the case, Attorney Alvarez also provided effective representation by examining a witness on Petitioner's behalf and providing the closing argument. In support of his claim, Petitioner has not identified any deficiency in the representation provided by his two trial attorneys. Rather, he makes the conclusory allegation that they failed to call certain witnesses or prepare a defense. Petitioner fails altogether, however, to identify the witnesses his attorneys failed to call or explain what the omitted defense should have been. Nor does Petitioner attempt to explain how any missing witness or defense would have changed the result. The evidence of Petitioner's guilt was overwhelming and included testimony about Petitioner's drug-trafficking activities from several of his co-conspirators, which testimony was corroborated by physical evidence, records, as well as the testimony of the law enforcement officers who investigated the case. Thus, Petitioner is unable to show deficient performance or establish

prejudice based on his contention that his counsel were unprepared for trial.

Petitioner also contends that his attorneys were ineffective for failing to challenge his competency. This contention is without merit. Either party may move for a hearing to determine the mental competency of a defendant at any point after the commencement of criminal proceedings. 18 U.S.C. § 4241(a). When presented with such a motion, the district court should order a competency hearing "if there is reasonable cause to believe that the defendant may be presently suffering from a mental disease or defect rendering him mentally incompetent." Id. Under the applicable standard, a defendant is incompetent if he is "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." Id. Even in the absence of a motion, the court may order a competency hearing on its own if it has reasonable cause to believe the defendant is incompetent. Id. Whether reasonable cause exists is a matter "left to the discretion of the district court." United States v. Banks, 482 F.3d 733, 742 (4th Cir. 2007).

Petitioner's claim that his attorneys were ineffective for failing to move for a competency hearing is unsupported. Petitioner has not identified any evidence suggesting that he was not competent to stand trial. Instead,

13

Petitioner points to the presentence report, which states that he suffered from "severe depression and anxiety with psychotic episodes and panic attacks." [Criminal Case No. 2:10-cr-00014-MR-6, Doc. 211 at 10]. Nothing in the record, however, indicates that any of these ailments impacted Petitioner's ability to understand the nature of the proceedings or prevented him from assisting in his defense. To the contrary, Petitioner appeared before this Court for multiple hearings during these proceedings, and he was represented by three different attorneys, all of whom were aware of his history of depression. At no point, however, did any of the attorneys report or did the Court perceive that Petitioner was not competent to proceed. Given the absence of any evidence suggesting that Petitioner was not competent, his claim fails.

Finally, Petitioner contends that Attorney Snow was ineffective at sentencing. Again, the record contradicts this contention. First, Petitioner claims that Attorney Snow failed to discuss the presentence report with him before sentencing. This claim is directly contradicted by both Petitioner's and Attorney Snow's statements during the sentencing hearing. In response to this Court's questions, Petitioner and Attorney Snow affirmed that they had reviewed the presentence report together, including during several phone calls. Moreover, in direct contradiction to Petitioner's

14

present allegation, Attorney Snow submitted objections on Petitioner's behalf, both to the facts recited in the report and to the offense level calculation.

Petitioner also contends that Attorney Snow was ineffective for failing to challenge a prior conviction listed in the presentence report. Even assuming that the sole conviction identified in the presentence report was not properly attributable to Petitioner as he claims, Petitioner is nevertheless unable to show prejudice because that conviction did not receive any criminal history points or otherwise impact Petitioner's sentence.

Finally, Petitioner claims that Attorney Snow rendered deficient performance by failing to challenge the drug quantity attributed to Petitioner at sentencing. Any objection to the 1,000 kilograms of marijuana attributed to Petitioner for purposes of calculating the base offense level would have been futile, however, in light of the jury's finding beyond a reasonable doubt that Petitioner was responsible for more than 1,000 kilograms of marijuana. Far from demonstrating ineffective assistance, a review of the record shows that Attorney Snow effectively represented Petitioner at sentencing, as Snow successfully argued for a downward departure.

In sum, Petitioner's second ground for relief is without merit.

## C. Petitioner's Prosecutorial Misconduct Claim

Finally, in his third ground for relief, Petitioner contends that the Government engaged in misconduct in connection with sentencing. For the reasons that follow, this claim is without merit.

When considering a claim of prosecutorial misconduct, the Court must determine "whether the conduct 'so infected the [proceedings] with unfairness as to make the resulting [conviction and sentence] a denial of due process.'" United States v. Scheetz, 293 F.3d 175, 185 (4th Cir. 2002) (quoting United States v. Morsley, 64 F.3d 907, 913 (4th Cir. 1995)). "The test for reversible prosecutorial misconduct has two components; first, the defendant must show that the prosecutor's remarks or conduct were improper and, second, the defendant must show that such remarks or conduct prejudicially affected his substantial rights so as to deprive him of a fair trial." Id.; see United States v. Caro, 597 F.3d 608, 624-25 (4th Cir. 2010).

In support of his prosecutorial misconduct claim, Petitioner suggests that the Government sought sentencing enhancements without announcing them to Petitioner before sentencing. Not only does Petitioner fail to identify the alleged surprise enhancements, but a review of the record shows that the only enhancement that impacted Petitioner's offense level

was a role enhancement, to which he objected in advance of the hearing. [Id. at 7-8; 14]. Because the record wholly contradicts Petitioner's claim that the Government engaged in prosecutorial misconduct with regard to sentence enhancements, Petitioner's claim fails.

In sum, Petitioner's third ground for relief is without merit.

**IV.   CONCLUSION**

For the reasons stated herein, the Court will dismiss the § 2255 petition.

The Court finds that the Petitioner has not made a substantial showing of a denial of a constitutional right. See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000)).  Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that his Motion to Vacate states a debatable claim of the denial of a constitutional right. Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).  As a result, the Court declines to issue a certificate of appealability. See Rule 11(a), Rules Governing

Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

## **O R D E R**

**IT IS, THEREFORE, ORDERED** that Petitioner's § 2255 motion [Doc. 1] is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: January 19, 2015

Martin Reidinger
United States District Judge